CLARK *v.* WOLVERINE PORTLAND CEMENT CO.

1. MASTER AND SERVANT—INJURIES TO SERVANT—SAFE PLACE TO
   WORK—ASSUMPTION OF RISK.

   Where an employé is sent into a place provided by the master,
   where discovery of a defect is difficult, he has a right to
   assume, in the absence of any circumstances creating a
   doubt in his mind, that his safety has been reasonably pro-
   vided for.

2. SAME—NEGLIGENCE—EVIDENCE—QUESTION FOR JURY.

   In an action against a master for the death of a servant, al-
   leged to have been caused by a loose plank in a walk along-
   side a coal conveyor which deceased was required to oil, evi-
   dence examined, and *held* to justify submission to the jury
   of the issue of defendant's negligence.

Error to Branch; Yaple, J.   Submitted November 18,
1904.   (Docket No. 111.)   Decided December 30, 1904.

Case by Charles Clark, administrator of the estate of
Thomas Russel, deceased, against the Wolverine Portland
Cement Company, for the negligent killing of plaintiff's
intestate.   There was judgment for plaintiff, and defend-
ant brings error.   Affirmed.

*H. H. Barlow* and *B. E. Barlow,* for appellant.

*Lockerby & Cowell,* for appellee.

MONTGOMERY, J.   The plaintiff recovered for an injury
to his intestate causing death.   The deceased, Thomas
Russel, for whose estate this action is brought, was at the
time of his death 27 years of age.   He had been employed
at the Quincy plant of the Wolverine Portland Cement
Company for some three months prior to his death.   For

some two weeks prior to his death he was employed as oiler of the coal conveyors at the Quincy plant aforesaid. His duty, among other things, required him to oil the conveyors two or three times in 12 hours. The conveyors consisted of a bottom and two sides (wood), in which framework there revolved an endless screw, by which means the coal was conveyed from the north to the south end of the conveyor. About every 12 feet along the conveyor there was an oil hole. The conveyor was situated some 20 feet above the floor of the factory, and ran from north to south. On the west side of the conveyor, and even with the bottom thereof, there was a plank walk 20 inches wide running parallel therewith. On the west side of said walk there was a partition extending nearly to the roof of the factory. The conveyor was divided into two sections, each section being about 150 feet in length. The north section was higher than the south section. Some 3 or 4 feet from where the two sections of the conveyor join, a steam pipe 5 inches in diameter passed through the partition and over the walk parallel with the south conveyor. Across this pipe was placed a plank. The level of this plank was lower than the walk along the north section of the conveyor, and higher than the walk along the south section. The plank was unfastened. At a point opposite this plank the conveyor required oiling from four to six times in 12 hours. The defendant company supplied its employés whose duty it was to oil the conveyor with torches.

On the morning of the 27th of December, 1902, the decedent came to the Quincy plant aforesaid, to enter on his regular employment. On arriving at the plant, he was told by Frank Boone that the screw conveyor at the point where the two conveyors joined needed oiling, and that he had better attend to it at once. The decedent started to oil the conveyor. Some 10 or 15 minutes later he was heard to call out, and Andrew Boyer, on going to the conveyor, found Mr. Russel caught in the conveyor at a point

opposite this loose plank.   Shortly after Mr. Russel was found in the conveyor he stated to Mr. Boyer that he fell into the conveyor by reason of the tipping of the plank. Some 30 minutes after he was found by the said Andrew Boyer the decedent died as a result of his injuries there received.

The circuit judge took from the jury the question as to whether the open conveyor and the failure to light with other means than torches was open and apparent, and charged that these hazards were assumed by the decedent, Russel, but left to the jury the question as to whether the risk resulting from this loose plank was open and apparent and assumed by said Russel.

The only question argued in this court is whether the circuit judge should have directed a verdict for the defendant on the ground that the plaintiff assumed the risk of this loose plank.   We think the question was for the jury, under proper instruction, and, as the instructions given are not complained of, no error is made to appear.

Recognizing fully the rule for which defendant contends that an employé assumes the obvious risk of his employment, and that the servant owes the duty of care to avoid injury and ascertain the conditions surrounding his work, we also understand that where an employé is, as in this case, sent into a place provided by the master, where discovery of such a defect as that here involved must be known to be difficult, he has a right to assume, in the absence of any circumstances creating a doubt in his mind, that his safety has been reasonably provided for.   It is said that decedent could have discovered that this plank was loose by pushing it with his foot.   But why push it with his foot?   The plank appeared to have been placed there as a part of the walk.   The testimony shows that at times in walking over the plank it would rock, but that at times it appeared solid.   Until decedent knew or had reason to believe that defendant had been so reckless of the lives of its employés as to leave this plank unfastened,

he was not bound to assume that it had been so negligent. And whether, in his work there, he had discovered the fact, was a question for the jury.

Judgment affirmed.

The other Justices concurred.