(November 27, 1906.)

JOHN IRA CRAWFORD, Appellant, v. THE BONNERS FERRY LUMBER COMPANY, a Corporation, Respondent.

[87 Pac. 998.]

PERSONAL DAMAGES—DEMURRER TO COMPLAINT—SHOULD BE ORDERED WHEN—BURDEN OF PROOF.

1. Where a complaint alleges the injury to plaintiff in plain and concise language, and that such injury resulted from the carelessness and negligence of defendant in the construction and operation of its sawmill and appliances thereto, and that plaintiff was in no way guilty of contributory negligence, and used ordinary prudence and care in the performance of the labor assigned to him, and in the performance of which he was injured, it is not subject to demurrer.

2. When the plaintiff has sufficiently plead the carelessness and negligence in the construction and operation of defendant's sawmill and other machinery connected therewith, and that through no fault of his he was injured and damaged by defendant whilst in its employ and performing the work prescribed for him by his employer, a demurrer to such complaint should be overruled, and de-

fendant permitted to answer setting up its defense; the burden of proof is upon defendant to show that plaintiff was guilty of contributory negligence.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for Kootenai County.   Hon. Ralph T. Morgan, Judge.

Plaintiff commenced this action for $2,000 personal damages.   A demurrer to the complaint was sustained and judgment entered for costs.   The appeal is from the judgment. *Reversed.*

R. E. McFarland, for Appellant.

The court erred in sustaining respondent's demurrer to the amended complaint.

The amended complaint clearly shows that Crawford was engaged to work in a different capacity from that in which he was injured; that on the day of the accident, over his objection, respondent required him to suspend the labor he was engaged to perform, and perform services which were new to him, and which he did not understand, and provided him with a cart and appliances with which he had had no experience; that the cart he used was too high and the driveway which he was compelled to use was too low; all of which was well known to the respondent and unknown to appellant, and could not have been discovered by him; that said conditions were latent and not an obvious danger, and that after appellant had carefully inspected the surroundings, vehicle and appliances, they appeared to him to be safe and suitable for said work.   (*Williams v. Ballard Lumber Co.,* 41 Wash. 338, 83 Pac. 323; *Weist v. Coal Creek Ry. Co.,* 42 Wash. 176, 84 Pac. 725; *Choctaw, O. & G. R. Co. v. Jones,* 77 Ark. 367, 92 S. W. 244; *Crist v. Wichita Gas & Coal Co.,* 72 Kan. 135, 83 Pac. 199; *Bird v. Utica Min. Co.,* 2 Cal. App. 674, 84 Pac. 256; *Clark v. Wolverine Portland Cement Co.,* 138 Mich. 673, 101 N. W. 845; *Munford v. Chicago R. I. & P. Ry. Co.,* 128

Iowa, 685, 104 N. W. 1135; *Colloway v. Agar Packing Co.,* 129 Iowa, 1, 104 N. W. 721; 4 Thompson on Negligence, 4017; *Lemser v. St. Joe R. Co.,* 70 Mo. App. 209; *Galveston Ry. Co. v. Hughs,* 22 Tex. Civ. App. 134, 54 S. W. 264; *James v. Rapid Lumber Co.,* 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 33; 4 Thompson on Negligence, sec. 4021; *Galveston etc. v. Manns* (Tex. Civ. App.), 84 S. W. 254; *Drake v. San Antonio etc. Co.* (Tex.), 89 S. W. 407; *Western Union v. McMullen;* 58 N. J. L. 155, 33 Atl. 384, 32 L. R. A. 351; *De Costi v. Hargraves,* 170 Mass. 375, 49 N. E. 735; Wood on Master and Servant, sec. 349; *Hill v. Gust,* 55 Ind. 45; *Hauff v. Railway Co.,* 100 U. S. 213, 25 L. ed. 612; *Wheeling v. Wason Mfg. Co.,* 135 Mass. 294; *Condon v. Missouri etc. R. R. Co.,* 78 Mo. 567; Beach on Negligence, 361; *Merrill v. Pyke,* 94 Minn. 186, 102 N. W. 393; *Texas S. L. Ry. Co. v. Waymire* (Tex. Civ. App.), 89 S. W. 452; *De Mase v. Oregon Ry. & Nav. Co.,* 40 Wash. 108, 82 Pac. 170; *Hocking v. Windsor Spring Co.,* 125 Wis. 575, 104 N. W. 705; *Anderson v. Northern Pac. Lumber Co.,* 21 Or. 281, 28 Pac. 5; *Ford v. Fitchburg R. Co.,* 110 Mass. 240. 14 Am. Rep. 598.)

John P. Gray and E. C. Macdonald, for Respondent.

The complaint herein discloses that appellant was guilty of gross negligence, although it seeks to conceal that fact by a liberal use of the allegation that plaintiff had no knowledge of the dangers incident to his occupation. It sets up no defect in the place wherein appellant had to work, or the implements given him to work with, that was not open and apparent to him as well as to the respondent.

The law requires a servant to go about with his eyes open. He has no right to rush blindly into danger and then set up that he did not see the danger. (*Wormell v. Maine Cent. R. Co.,* 76 Me. 397, 1 Am. St. Rep. 321, 10 Atl. 49; *Choctaw O. & G. R. Co. v. Holloway,* 114 Fed. 458-460, 52 C. C. A. 260; *Regan v. Palo,* 62 N. J. L. 30, 41 Atl. 364, 365; *Whelton v. West End St. Ry. Co.,* 172 Mass. 555, 52 N. E. 1072, 1073; *Miller v. Grieme,* 53 App. Div. 276, 65 N. Y. Supp. 813; *Jennings v. Tacoma Ry. & Motor Co.,* 7 Wash. 275-278, 34 Pac.

937, 938; *Goldthwait v. Haverhill & G. St. Ry. Co.*, 160 Mass. 554, 36 N. E. 486; *Mellot v. Louisville & N. R. Co.*, 101 Ky. 212, 40 S. W. 696; *Bullivant v. Spokane*, 14 Wash. 577, 45 Pac. 42; *Minty v. Union Pac. Ry. Co.*, 2 Idaho, 471, 21 Pac. 660.)

Plaintiff, in his complaint, attempts to make much of the fact that he was directed to assume new duties against his protest that he was unfamiliar with that kind of work. Plaintiff could have accepted or refused his new occupation at his option. But upon accepting it, he assumed all the risks incident thereto. (*Leary v. Boston & A. R. Co.*, 139 Mass. 580, 52 Am. St. Rep. 733, 2 N. E. 115.)

STOCKSLAGER, C. J.—This appeal is from Kootenai county. Plaintiff filed his amended complaint, to which defendant interposed a demurrer, which was sustained, and judgment entered for costs. The appeal is from the judgment.

The complaint alleges that defendant is a corporation organized and existing under the laws of the state of Wisconsin, and doing a sawmill business in Kootenai county, this state. That about one year prior to August 24, 1904, plaintiff entered the employ of defendant as teamster to haul and skid logs and timbers in the forests owned and used by defendant in connection with its sawmill. It is then alleged that defendant, in connection with its said sawmill, used a certain carrier operated for the purpose of conveying refuse created in said sawmill to a certain box midway of said carrier, when said refuse was by said carrier dumped into dump-carts driven under said box, and hauled away by other employees of defendant; that said carrier consisted of a loop chain and stationary woodwork, constructed so as to convey said refuse from said sawmill to said box, and was about two hundred feet long; that said box had a driveway thereunder and therethrough, with heavy ceiling and timbers over said driveway, and a trap door in said ceiling and timbers through which said refuse was dumped into dump-carts below. The dump-carts used by defendant for hauling said

refuse are described as large, heavy, two-horse, four-wheeled carts, with a heavy bed or box arranged to balance on an axle to which it was held by an iron bolt; that said bed or box was held in place by means of a hook thereto, which fastened into the tongue or forepart of the running gear of the said dump-cart; that at the rear end of said bed or box there was a heavy tail-board or end-gate fastened by means of hinges, bolts or swivels in such manner that said tail-board or end-gate could be swung or turned over upon and across said bed or box when said carts were being loaded; that the said bolts, hinges or swivels extended higher than the surface of said bed or box, and that when said tail-board was swung over and across said bed or box it was about on a line with the top parts of said bolts, hinges or swivels.

The fifth allegation of the complaint is "that on the day last aforesaid, and while plaintiff was in the performance of his said duties in hauling and skidding logs and timbers in the forests of defendant pursuant to said employment, the said defendant directed and required plaintiff to suspend said work and to haul certain laths from the south end of said sawmill to a dry yard northeast of said sawmill, a distance of about five hundred feet, with one of said dump-carts; that thereupon plaintiff objected to performing said last-mentioned services and informed defendant that he was ignorant of, and did not understand said work, or dump-carts, or the use thereof, whereupon defendant further directed and required plaintiff to perform said last-mentioned labor, and insisted that he do so, and plaintiff proceeded to haul said laths as directed by defendant as aforesaid.

"VI. That it was, then and there, and at all times, the duty of the defendant to furnish, keep and maintain a safe, sufficient and suitable place for plaintiff to work in and at, and to provide, keep and maintain sufficient, suitable and safe appliances, means, implements and vehicles with which to perform said labor, and to provide, keep and maintain sufficient, suitable and safe roads over which to haul said laths, but that, disregarding its duty in the premises, and in this re-

spect, it knowingly, carelessly and negligently caused said carrier and box to be so constructed that they were too low to safely drive under with said dump-cart loaded with laths, and said dump-cart was too high to safely drive under said carrier and box, and the only road from said south end of said sawmill to said dry yard, over, along and upon which plaintiff had to, or could, haul said laths, led and ran under said carrier and box and was rendered dangerous and unsafe by reason of said carrier and box being too low and said dump-carts too high, and that said carrier, box, dump-cart and road, by reason of the facts above stated, were dangerous and unsafe for plaintiff to work in and about in hauling said laths, and defendant at all of the times herein mentioned knowingly, carelessly and negligently kept and maintained them in such unsafe and dangerous condition, and knew of their dangerous and unsafe condition, and knew that it was unsafe and dangerous for plaintiff to haul said laths with said dump-cart, but that plaintiff had no knowledge or information of the dangerous or unsafe condition of said carrier, box, dump-cart or road, and did not know that said work was dangerous or unsafe, or that the said tail-board was too heavy and said dump-cart too high for one man to swing over and across said dump-cart, which had to be done before said dump-cart could be loaded with laths, all of which facts were well known to defendant; and said facts were not known to plaintiff, and could not be known or determined by plaintiff from any inspection which plaintiff was permitted to make, or was able to make, before or at the time of performing his duties, in the performance of which he was injured; that said dump-cart was not a fit, suitable, or safe vehicle with which to haul laths, and was not constructed for that purpose; that it was difficult for one man to load with laths, and was too high and difficult for one man to manage, handle and control when loaded with laths, all of which facts were well known to defendant and unknown to plaintiff; that plaintiff had never used a dump-cart of that sort before said day, as defendant well knew, and could not detect or know the element of dan-

ger resulting, or that might result, from such conditions as aforesaid, which was a latent and not an obvious danger; that upon a careful inspection of said road, carrier, box and dump-cart by plaintiff, they and each of them appeared to be safe and suitable for said work.

"VII.    That on the day last aforesaid, and while plaintiff was hauling said laths as directed and required by defendant as aforesaid, without any assistance, and after said tail-board had been swung over and across the hind end of said bed or box of said dump-cart, and while plaintiff was ignorant of the dangerous and unsafe condition of said carrier, box, dump-cart, and road, and while they appeared to plaintiff to be safe and suitable for said work, and he was ignorant of the dangerous character of said work, in hauling a load of laths from the south end of said sawmill over and along said road and under said carrier box to said dry yard, and while plaintiff was sitting upon the seat of said dump-cart, which was in front of and lower than the bed or box of said dump-cart, driving the team of horses hitched to said cart, and while he was exercising due care and caution, without any fault of plaintiff, the hind end of said dump-cart struck against the timbers and ceiling of said box over said driveway thereunder, and caused the forepart of said dump-cart to be suddenly and with great force and violence raised and thrown up to and against said ceiling and timbers, by reason of which plaintiff was with great force and violence caught and held between and against said dump-cart and ceiling and timbers, whereby his nose and back were broken and his breast bone crushed and mangled, and plaintiff was thereby otherwise greatly shocked, injured, bruised and wounded without any fault or negligence on his part.

"VIII.    That in consequence of the injuries received by the plaintiff as aforesaid, he has become and is paralyzed in his stomach, bowels and lower limbs, and became and is permanently lamed, crippled and diseased, and has suffered, and still suffers, great mental pain and anguish and great bodily pain.

"IX.  That at the time he received the injuries complained of plaintiff was a strong, able-bodied man, and could earn and was earning forty-five dollars and his board per month, and that on account of said injuries his earning capacity has been entirely destroyed.

"X.  That by reason of the injuries sustained by plaintiff as aforesaid, he has been and is damaged in the sum of two thousand dollars ($2,000)."

The demurrer is as follows: "1. The amended complaint does not state facts sufficient to constitute a cause of action. 2. The amended complaint is ambiguous, unintelligible and uncertain."

Only two errors are assigned: "1. The court erred in sustaining respondent's demurrer to the amended complaint; 2. The court erred in rendering and entering judgment dismissing appellant's action and awarding costs to respondent."

Appellant cites a long list of authorities in support of his contention that the demurrer should have been overruled. Respondent also provides us with a number of authorities contending that they support the action of the trial court, and that there was no error in sustaining the demurrer and entering judgment for costs.

There is a wide range in the decisions of appellate courts on the relation of master and servant, and under what circumstances and conditions the master is responsible for personal injuries to the servant.  It would seem that justice and equity would require the master to use all reasonable means to protect the servant from injury while in his employ; any other rule would be harsh, unjust and unreasonable.  If it is true, as alleged in the complaint, that appellant had been engaged in other work for respondent for a year prior to the accident, and on the day of the accident had been required by the master to perform labor with which he was not familiar; that in the performance of such labor he was injured as alleged; that he had carefully inspected the situation, and no danger was apparent; that he took the team and dump-

cart furnished him by respondent, loaded the laths as directed, and followed the only road furnished for him and met with the accident as alleged; that no warning had been given him by respondent or anyone acting for it of the danger in passing under the carrier with the dump-cart loaded with laths, it would seem to us that appellant was not guilty of contributory negligence, and that respondent should be required to respond in damages for his injury. When appellant was furnished the team and dump-cart and directed to haul the laths to the dry-house, and there was but one road over which he could travel, he had a right to assume that the cart loaded with laths would safely pass under the carrier. especially when it was his first day in the new field of labor assigned him. We are not without authority in this conclusion. (*Weist v. Case Creek Ry. Co.*, 42 Wash. 176, 84 Pac. 725.) In *Christ v. Wichita Gas, Electric Light & Power Co.*, 72 Kan. 135, 83 Pac. 199, Mr. Justice Smith, of the Kansas supreme court, discussing a personal damage case, says: ''The rule requiring a master to furnish his servant a reasonably safe place to work has no iron-bound limitations as to whether the place be a permanent or a temporary one. If the master sends a servant to work in a place of danger, however temporary, and the danger arises from acts or omissions of other servants against which the servant has no means of protecting himself, it is the duty of the master to provide such warnings or to take such other steps as may be reasonably necessary to safeguard the servant so employed.'' In *Clark v. Wolverine Portland Cement Co.*, a recent decision of the supreme court of Michigan, 138 Mich. 673, 101 N. W. 845, the rule is laid down thus: ''Where an employee is sent into a place provided by the master, where discovery of a defect is difficult, he has the right to assume, in the absence of any circumstances creating a doubt in his mind, that his safety has been provided for.'' (Thompson on Negligence, sec. 4017.) (*Drake v. San Antonio & A. P. Ry. Co.*, 89 S. W. 407, a Texas case, is very interesting and instructive on the duty of the master to the servant. Section

349 of Wood on Master and Servant says: ''When the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it; but this only applies where the servant is of sufficient discretion to appreciate the dangers incident to the work. Where there are latent defects or hazards incident to an occupation, of which the master knows, or ought to know, it is his duty to warn the servant of them fully, and failing to do so, he is liable to him for any injury that he may sustain in consequence of such neglect; and this rule applies even when the danger or hazard is patent, if, through inexperience or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard.'' Mr. Beach on Contributory Negligence, section 156, says: ''Upon turning to the decisions we shall find that the decided weight of authority is in favor of the rule that the burden is upon the plaintiff in these actions to show his own freedom from contributory negligence,'' and cites in support of this text Massachusetts, Maine, Mississippi, Louisiana, North Carolina, Michigan, Oregon, Illinois, Connecticut, Iowa and Indiana, and further says that ''This rule has not in general found favor with the text-writers and the theorists and critics; it is submitted that, if there is to be any inflexible rule, this is the one which will most often subserve the ends of substantial justice.'' Then at section 157 the author says: ''In many jurisdictions it is the rule that contributory negligence is matter of defense, and that the burden of establishing it is upon the defendant. Where this rule obtains, the plaintiff has made his case when he has shown injury to himself, and negligence on the part of the defendant, which was a proximate cause of it. It then devolves upon the defendant to allege and prove contributory negligence as matter of defense, the presumption being in favor of the plaintiff, that he was, at the time of the accident, in the exercise of due care, and that the injury was caused wholly by the defendant's negligent misconduct. This is the doctrine of the supreme court of the United States, and

it is the rule in Alabama, California, Georgia, Kentucky, Kansas, Maryland, Minnesota, Missouri, New Hampshire, New Jersey, Nebraska, Ohio, Pennsylvania, Rhode Island, South Carolina, Texas, Wisconsin, West Virginia, Vermont and Colorado, as well as in England."  ·

The two sections above referred to will be found quite interesting and instructive on the subject under consideration. We can see much more reason for the rule laid down in the last section and followed by most of the American courts, as well as in the courts of England, as stated by Mr. Beach.  It is only fair to assume that the master knows, or should know, the condition of his property and of any danger that may be lurking in the construction or operation of any part of it to his servants, hence his duty to repair the evil, or warn his employees of the possible danger to them.

Many other authorities are cited by appellant and a number by respondent, but a careful inspection of all of them convinces us that the demurrer in this case should have been overruled and the defendant required to plead by way of answer to the complaint.

The judgment is reversed and remanded to the lower court, with instructions to overrule the demurrer and give defendant reasonable time to answer the complaint if it so desires. Costs to appellant.

Ailshie, J., and Sullivan, J., concur.