### DRUCK v. ANTRIM LIME CO.

MASTER AND SERVANT—SAFE PLACE—NEGLIGENCE—QUARRY.
Evidence tending to show that an employé of defendant was injured by a fall of rock from the face of a bluff overhanging its quarry, that a blast had been set off the previous afternoon, that blasting had a tendency to loosen the rock on the face of the bluff and it was customary after exploding a charge for the foreman to inspect the condition of the bluff, that he made no examination immediately before plaintiff was injured and that plaintiff was set to work without being warned of any danger, presents a case for the jury upon the questions of negligence, contributory negligence, and assumption of risk.

Error to Emmet; Shepherd, J. Submitted June 15, 1911. (Docket No. 72.) Decided October 2, 1911.

Case by William F. Druck against the Antrim Lime Company for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Maxwell W. Benjamin,* for appellant.
*Pailthorp & Hackney,* for appellee.

STONE, J.    This action was brought by the plaintiff, a man about 60 years of age, to recover damages which he alleges he sustained on December 19, 1908, while in the employ of the defendant in its lime kiln and quarry plant, which said kiln and quarry were used in the manufacture of lime, and for the getting out and loading of stone for shipment to other points.    The declaration alleges that in the month of December, 1908, the defendant employed the plaintiff to work for it, in and about said quarry, as a common laborer, and that he continued in the employment down to the time of his injury, which occurred at the time above stated.    We quote the following from the declaration:

"That the said quarry from which the stone were extracted, as aforesaid, and where men in the employ of the defendant were required to work, was an excavation in the side of the hill, and the 'blasting and removal of earth and stone therefrom had formed a bluff from 15 to 25 feet in height, and of considerable length; that it was well known to said defendant company that its laborers were obliged to work at or from the bottom or base of the said bluff, and it therefore became and was the duty of the said defendant to carefully and vigilantly look to the condition of said bluff and provide against any injury to the said laborers by the falling from above of earth or stone which might have become loosened by blasting or excavating as aforesaid; that it became and was the duty of the said defendant company to use reasonable and proper care to provide for its said laborers a reasonably safe place in which to work, and not to subject them to any extraordinary risk or hazard in the course of their duty and employment.    Yet the said defendant, heretofore, to wit, on the 19th day of December, A. D. 1908, not regarding its duty in this behalf, did not use reasonable and proper care to provide for the plaintiff a reasonably safe place in which to discharge his duties and work as aforesaid, but wholly failed so to do, and, to the contrary, did subject him, the said plaintiff, to extraordinary risk and hazard in the course of his duty and employment in this, to wit, on or about the 18th day of December, A. D. 1908, some time during the late evening or night-time of said day, the said defendant, by the use of gunpowder, dynamite, or

other explosive, loosened and broke up a large quantity of earth and stone at said quarry, and negligently and carelessly left a loose projection of earth and stone at a place in said bluff over the location where the men were required to work, to the great danger of its said laborers in and about the said quarry. And the plaintiff avers that the said defendant, by the exercise of reasonable care, might have known and did know of the unsafe condition of the said quarry, and that by failing to have the said dangerous projection removed before any laborers were ordered there to work, it carelessly and negligently subjected the plaintiff to extraordinary risks and hazards in his said employment; whereby and by reason whereof, on, to wit, the 19th day of December, A. D. 1908, the said plaintiff was directed by the said defendant to go to the said quarry and work at removing stone therefrom and load same into a car; that the said plaintiff, in accordance with said request, in the forenoon of said day, commenced work at said quarry; that before 20 minutes had elapsed after commencing said work, as aforesaid, a large quantity of the said projecting earth and stone fell down upon the plaintiff, injuring his right leg so severely that it had to be amputated," etc.

As the circuit judge upon the trial of the case directed a verdict and judgment for the defendant, in our statement of the claimed facts, we give the claim of the plaintiff in its most favorable light.

The plaintiff testified that he was hired by one Sherman Castle, the foreman of the defendant, who had charge of the men about the premises, and that whatever work was done by the plaintiff was done under the direction or instructions of said Castle. The quarry where the plaintiff worked was an open quarry. The ledge was a kind of bluff or hillside, and in working the quarry it had been started from the bottom of the hill and extended back into it. At the time of the injury, the ledge had been opened up in length from 300 to 400 feet. At the deepest place the height of the ledge was about 27 feet. It varied somewhat in depth; some portions of it being about 16 to 20 feet in height. The ledge ran east and west, and faced the north, and the face of the bluff was practically per-

pendicular; the formation being of stone all the way from top to bottom. The loose sand and dirt were first stripped off above, and the condition of the rock for the first 10 or 15 feet below this stripping was loose, and was generally removed by bars and worked down into the bottom of the quarry. This work is, in this case, called "barring." One end of the quarry, where it had been worked deeper, was harder, and the lower eight or ten feet had to be blasted out. In quarrying this ledge, the solid rock was blasted from the bottom, and the loose rock removed by barring, and all the work would be carried back together. Some blasting was also done in the quarry to break the rock that was too large to be handled, or that could not be broken with a hammer. The layer of rock in the upper and looser portion ran horizontally, but was usually connected by a layer of fossilized shells. The defendant company had two kilns at the quarry. The business of the company was getting out limestone for shipment to other points, and the manufacture of lime at the plant.

The plaintiff testified that his principal employment at the plant was the handling of wood, loading and unloading wagons, and loading carts; but we think it appears by the undisputed testimony that he also worked in the quarry for about one-third of the time of his employment there, at which time his work consisted of some stripping and shoveling stone into carts, and some barring of stone. The plaintiff was hurt in the morning, between 8 and 9 o'clock. The previous afternoon he had worked a short time in the quarry loading wagons with car stone, and some with gravel and dirt. About half past 3 in the afternoon of December 18th, the plaintiff testifies that he was ordered by the foreman, Mr. Castle, to leave the work of loading wagons with stone in the quarry and unload some wood. It is the claim of the plaintiff that, during the afternoon of December 18th, a charge of dynamite was exploded in the quarry, and that this blasting was supervised by Sherman Castle, who, it is claimed, always took charge of that

work, and that the effect of the blasting set off in that quarry was to loosen or disturb the face of the bluff, more or less, all the way to the top, and loosen the stone. On the morning of the 19th of December, the plaintiff first helped to get in two loads of wood. After he had finished unloading the wood, the foreman directed him to go into the quarry and load a cart with stone. The plaintiff testified that Mr. Castle did not call his attention to any danger that might be there at that time, and gave the plaintiff no warning of any danger, and plaintiff did not know that there was any danger there.

An important question in the case upon the trial was whether there was any blasting done in the quarry on the afternoon of December 18th. The plaintiff testified that there was; and while, upon cross-examination, it appears that his recollection at the trial was somewhat defective because of his injury, yet he persists in stating that, to the best of his recollection, such blasting took place. We think there was enough in his testimony upon this point to carry the question to the jury. The defendant denied that there was any blasting on the 18th, or any occasion for examination. Soon after plaintiff commenced his work in loading the cart, a clump of stone broke off the side of the ledge, fell upon him, and injured him very severely, rendering it necessary to amputate his right leg, and he was also injured seriously in and about the head and other parts of the body.

At the close of the plaintiff's case, no motion was made to direct a verdict, but the defendant proceeded to put in its testimony. The following testimony of the witness Castle is very significant. We quote from his cross-examination:

"*Q.* Are those loosened stones, that may be loosened up as a result of the blast, are they always apparent—their condition of danger?

"*A.* Do you mean whether you would know whether they were dangerous by looking at them?

"*Q.* Yes, sir.

"*A.* Yes.

"*Q.* Always?

"*A.* As a general thing.   Well, I don't say always, because a person might—

"*Q.* A stone might be loosened up, so that it would actually give way, and by looking at it apparently it would not reveal its dangerous condition; isn't that true?

"*A.* Yes.   It might be that way.   I was always in the habit, after starting off these blasts, of examining the bluff to see what condition it was left in; always did. My method of examination was looking it over and see if there was anything hanging that was liable to drop.   I would go up above.   I generally had one or two men with me, and any stone that appeared to be dangerous we knocked off.   We had poles, and we would poke them off —all that looked dangerous.   I always did that before I sent any men to the quarry down below to shovel stone, when we let off a blast.

"*Q.* Did you call the attention of the men, when you sent them into the quarry after a blast had been set off, and after an examination had taken place, did you always, or usually, call their attention to the danger?

"*A.* Usually did.

"*Q.* Did you always?

"*A.* I couldn't tell as to that."

Farther along in the cross-examination he testified, relative to setting the plaintiff at work on the morning of the injury, as follows:

" When he spoke to me there, I didn't call his attention to any danger that might be there, not at that time; I said nothing about it.   I don't think he was working there—in the quarry—more than ten minutes, before he got hurt.   At that time I was up at the other end of the quarry—the kiln.   No one was right there with Mr. Druck loading the car; he was alone."

The circuit judge, at the close of all the testimony, directed a verdict and judgment to be entered for the defendant, upon the ground, as we understand the record, of assumption of risk; the court having in its charge directing the verdict used this language:

"In the opinion of the court, the danger was just as ob-

vious to this man himself as it was to any one else, or, if not exactly to himself, it was to his fellow employés; that the company was no more to blame than he was.  *  *  * And as the law is in Michigan, when a person voluntarily assumes the risk—knows what the risk is—and the company has done all that could be expected of it under the circumstances, he is not entitled to recover."

The plaintiff has brought the case here upon writ of error, and the fourth assignment of error complains of the directed verdict by the court, and that question alone is all that it will be necessary for us to consider.

It is the claim of the defendant, among other things, that the case is controlled by the case of *Petaja* v. *Mining Co.*, 106 Mich. 463 (64 N. W. 335, 66 N. W. 951, 32 L. R. A. 435, 58 Am. St. Rep. 505), and like cases. We cannot agree with counsel in this contention. Here was an open place, from three to four hundred feet in length, where the rock was barred or blasted down from time to time, then broken up and loaded into carts for the purpose of manufacture or shipment, as the case might be. The change, if any, that was taking place in the face of the quarry was a very gradual one. The undisputed evidence showed that a small force of men was there employed; that blasting would take place at considerable intervals of time; and that the place was not different from an ordinary open pit. We think that the usual rule of safe place, as it has been defined by this court, would apply here. By the undisputed testimony of the foreman, Castle, it appeared that it was his practice to examine the condition of the bluff after each blast. This, by the undisputed evidence, the defendant considered necessary for the safety of the men. Yet, in the light of this custom and duty, the foreman set the plaintiff at work in the quarry, where he would be exposed to falling rocks, without warning him of any danger, or in any way calling his attention to the fact that blasting had been done, and that no examination had taken place.

It may be said that the reason for this was that the

witness Castle denied that any blasting had taken place upon the afternoon of December 18th, and that there was no occasion to either examine the bluff or warn the plaintiff. But it must not be forgotten that we are here dealing with a case where the court directed a verdict for defendant. There was some evidence on the part of the plaintiff that blasting had taken place on the afternoon of December 18th. The duty and custom of examining the bluff after such blasting, and the fact that the plaintiff was set at work the next morning, without warning, appear undisputed, or, we might say here, appear by the testimony of defendant's foreman. It is the duty of the master under such circumstances to exercise reasonable and proper watchfulness as to conditions, and guard against dangers liable to arise. If such conditions existed, and the master could have found and removed the loose rock by reasonable care and examination, it was its duty to do so, if there was such a custom. *Johnson* v. *Spear*, 76 Mich. 139 (42 N. W. 1092, 15 Am. St. Rep. 298); *Van Dusen* v. *Letellier*, 78 Mich. 492 (44 N. W. 572); *Kaukola* v. *Mining Co.*, 159 Mich. 689 (124 N. W. 591).

Defendant's counsel urges that it must be assumed that Castle made such examination after the blast on December 18th. We do not think that this position is tenable, for Castle did not claim that he made such examination, either on the 18th or 19th of December. In fact, he positively denied that a charge of dynamite had been exploded on the 18th.

We are constrained to say, after a careful examination of the record, that we think the trial court erred in directing a verdict for the defendant. The most favorable statement for the defendant that can be made from this record is that whether the plaintiff was in the employ of the defendant, and whether the plaintiff assumed the risk, or was guilty of contributory negligence, were questions for the jury under proper instructions. *Andrews* v.

167 MICH.—11.

*Mining Co.*, 114 Mich. 375, 381 (72 N. W. 242); *Clark v. Cement Co.*, 138 Mich. 673, 675 (101 N. W. 845).

For the error pointed out, the judgment of the court below is reversed, and a new trial granted.

OSTRANDER, C. J., and BIRD, BROOKE, and BLAIR, JJ., concurred.